**FANTASY, INC., Plaintiff,**

v.

**John C. FOGERTY, Wenaha Music Co., Warner Bros. Records, Inc., WEA International, Inc., Defendants.**

**John C. FOGERTY, Counterclaimant,**

v.

**FANTASY, INC., Counterdefendant.**

**No. C–85–4929 SC.**

United States District Court, N.D. California.

June 5, 1987.

Order on Motion for Reconsideration July 2, 1987.

---

See also, 654 F.Supp. 1129.

Malcolm Burnstein, Burnstein, Walker &
Bull, San Francisco, Cal., for plaintiff.

Kenneth Sidle, Gipson, Hoffman & Pan-
cione, Los Angeles, Cal., for defendant
Fogerty.

Joseph Golden, Rudin, Richman & Appel, Beverly Hills, Cal., for defendants Warner Bros. and WEA Intern.

ORDER RE PLAINTIFF'S MOTION TO STRIKE AND MOTIONS FOR SUMMARY JUDGMENT AND FOGERTY'S MOTION FOR SUMMARY JUDGMENT

CONTI, District Judge.

Plaintiff brings this action against defendants John C. Fogerty and Wenaha Music Co., (collectively "Fogerty") and Fogerty's licensees, defendants WEA International, Inc. ("WEA") and Warner Bros. Records, Inc. ("WBR") (collectively "Warner") for copyright infringement. Plaintiff also sues Fogerty for declaratory relief. In turn, Fogerty asserts various counterclaims against plaintiff.

In 1970, Fogerty wrote the song "Run Through the Jungle" ("Jungle"). Fogerty subsequently granted the exclusive rights in the Jungle copyright to plaintiff's alleged predecessors, Cireco Music and Galaxy Records. In return, Fogerty received a sales percentage and other royalties derived from the exploitation of Jungle. In 1984, Fogerty wrote the song "The Old Man Down the Road" ("Old Man"). Fogerty registered a copyright to Old Man and then authorized Warner to distribute copies of Fogerty's performance of Old Man. Plaintiff claims Old Man is Jungle with new words and has sued for infringement.

Several motions bring this matter presently before the court. First, plaintiff moves to strike Fogerty's filing titled: "Answer of John Fogerty to First Amended Complaint for Copyright Infringement and Declaratory Relief and Counterclaims for Relief Based on Rescission (Restitution of Songs), Copyright Infringement or, in the Alternative, for Damages and an Accounting" ("Fogerty's Answer to First Amended Complaint"). Second, plaintiff moves for summary judgment establishing defendants' liability for copyright infringement or, in the alternative, an order specifying that certain facts appear without substantial controversy. Warner joins Fogerty's opposition to this motion. Third, Fogerty seeks summary judgment on plaintiff's second claim for declaratory relief. And fourth, plaintiff's seeks summary judgment on Fogerty's first and second counterclaims for restitution and copyright infringement.

I. *Plaintiff's Motion to Strike.*

▌ Plaintiff seeks to strike Fogerty's Answer to First Amended Complaint. Plaintiff argues that Fogerty's Answer to Amended Complaint makes no new allegations against Fogerty. Memorandum of Points and Authorities in Support of Motion to Strike Purported Answer and Counterclaims ("Motion to Strike"), pp. 2–3. Plaintiff also argues that Fogerty filed his pleading untimely and without the court's leave. *Id.* Fogerty contends that his filing does not prejudice plaintiff since it does not introduce any new material issues. Memorandum of Points and Authorities in Opposition to Motion to Strike Answer and Counterclaim to First Amended Complaint ("Opposition to Motion to Strike"), p. 3. Fogerty states that his filing simply eliminates confusion between the First Amended Complaint and Fogerty's original answer and counterclaims. *Id.,* at pp. 5–7.

The court finds Fogerty's Answer to First Amended Complaint untimely. Fed. R.Civ.P. 15(a) requires a party to file a response to an amended pleading "within the time remaining for response to the original pleading or within 10 days after service of the amended pleading, whichever period may be the longer, unless the court otherwise orders." On October 6, 1986, plaintiff filed his First Amended Complaint. On October 3, 1986, plaintiff served his First Amended Complaint on Fogerty by mail. Six months later on April 8, 1987, Fogerty filed Fogerty's Answer to First Amended Complaint. Thus, Fogerty responded to plaintiff's amended pleading outside the time period prescribed by Rule 15(a).

Fogerty also failed to seek the court's permission prior to amending his answer and counterclaims. Rule 15(a) provides that a party must seek the court's leave or obtain the adverse party's written consent

before amending his pleading after the adverse party has filed a response. Fogerty's Answer to First Amended Complaint amends his prior pleading by adding a new allegation to his first counterclaim and restating certain affirmative defenses. *See,* Fogerty's Answer to First Amended Complaint, ¶¶ 23, 28 & 36. Prior to the filing of this amended pleading however, plaintiff replied to Fogerty's counterclaims. *See,* Plaintiff's Reply to Defendant Fogerty's Amended Counterclaims. Since plaintiff has filed a responsive pleading to Fogerty's counterclaims, Rule 15(a) requires Fogerty to seek the court's leave prior to amending them. Fed.R.Civ.P. 15(a). Fogerty has failed to do so.

Lastly, the court finds Fogerty's Answer to First Amended Complaint redundant. Plaintiff's First Amended Complaint makes no new allegations against Fogerty. The amended complaint simply adds defendant WEA International, Inc. and eliminates certain pendant claims. Thus, Fogerty had the opportunity to respond to plaintiff's allegations in his initial and amended answers to plaintiff's complaint. Apparently, Fogerty admits this fact since he states that Fogerty's Answer to First Amended Complaint presents no new material issues. Opposition to Motion to Strike, p. 3.

For the reasons stated above, the court strikes Fogerty's Answer to First Amended Complaint. The court finds Fogerty's filing untimely and redundant. In addition, Fogerty has failed to request the court's leave to amend his answer and counterclaims. In striking Fogerty's Answer to First Amended Complaint, the court does not consider Fogerty prejudiced. Fogerty states his filing presents no new material issues and was submitted to eliminate confusion in the pleadings, apparently for the court's convenience. Opposition to Motion to Strike, pp. 3, 5–7. Accordingly, the court grants plaintiff's motion to strike Fogerty's Answer to First Amended Complaint.

## II. *Motions for Summary Judgment.*

Summary judgment is proper only when there is no genuine issue of material fact or when, viewing the evidence in the light most favorable to the non-moving party, the movant is clearly entitled to prevail as a matter of law. Fed.R.Civ.P. 56(c); *Jung v. FMC Corp.,* 755 F.2d 708, 710 (9th Cir. 1985). Once a summary judgment motion is made and properly supported, the adverse party may not rest on the mere allegations of his pleadings, but must set forth specific facts showing that there is a genuine issue for trial. Fed.R.Civ.P. 56(e); *Celotex Corp. v. Myrtle Nell Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Weighing evidence, determining credibility, and drawing inferences from facts remain jury functions which may not be undertaken by the trial judge. *See, Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 2516, 91 L.Ed.2d 202 (1986).

### A. *Plaintiff's Motion for Summary Judgment Re Copyright Infringement.*

Plaintiff moves for summary judgment concerning defendants' liability for copyright infringement. In addition, plaintiff requests summary judgment regarding defendants' fair use and 1st Amendment defenses. Lastly, plaintiff seeks summary judgment as to defendants' liability for extraterritorial damages. In the alternative, plaintiff seeks an order specifying that certain facts appear without substantial controversy. Warner joins Fogerty's opposition to plaintiff's motion.

#### 1. *Summary Judgment as to Infringement.*

■ The Ninth Circuit has recently reviewed the elements necessary for a successful claim of copyright infringement.

To establish a successful claim for copyright infringement, a plaintiff must prove (1) ownership of the copyright, and (2) "copying" of a protectible expression by defendant. [citations omitted] Because direct evidence of copying is rarely available, a plaintiff may establish copying by circumstantial evidence of: (1) defendant's access to the copyrighted work prior to the creation of defendant's work, and (2) substantial similarity of both general ideas and expression between the copyrighted work and the defendant's work.

*Baxter v. MCA*, 812 F.2d 421, 423 (9th Cir.1987). Once a plaintiff proves access and substantial similarity, the burden shifts to the defendant to disprove copying. *Transgo, Inc. v. Ajac Transmissions Parts Corp.*, 768 F.2d 1001, 1018 (9th Cir.1985).

■ Addressing the first element, plaintiff has established its chain of title to the Jungle copyright. In January 1968, John Fogerty entered into a three year publishing agreement with Cireco Music ("Cireco Agreement"). Declaration of Malcolm Burnstein in Support of Plaintiff's Motions for Summary Judgment ("Burnstein Declaration"), Ex. 64A. The Cireco Agreement granted to Cireco Music and its "successors and assigns" all rights to Fogerty's music composed during the agreement's term and provided Fogerty with royalties derived from the exploitation of such works. Burnstein Declaration, Ex. 64A at ¶¶ 1–4. Galaxy Records, Inc. ("Galaxy") succeeded to the Cireco Agreement when the partnership doing business as Cireco Music incorporated. Declaration of Saul Zaentz in Support of Plaintiff's Motions for Summary Judgment ("Zaentz Declaration"), ¶¶ 3, 4 & 6; Supplemental Declaration of Saul Zaentz in Support of Plaintiff's Motions for Summary Judgment ("Supplemental Zaentz Declaration"), ¶¶ 2–4, Exs. SZ1, SZ4; Declaration of Albert M. Bendich in Support of Plaintiff's Motions for Summary Judgment ("Bendich Declaration"), ¶ 3. Sometime in 1969 or 1970, John Fogerty, under the name of Dunes Corporation Limited ("Dunes"), entered into a publishing agreement directly with Galaxy ("Dunes Agreement"). Fogerty Deposition, p. 581 1s.4–21; Burnstein Declaration, Ex. 65 at ¶¶ 1–6. Similar to the Cireco Agreement, the Dunes Agreement granted Galaxy all rights to Fogerty's music and provided Fogerty with royalties. Burnstein Declaration, Ex. 65. In 1970, Fogerty delivered Jungle to Galaxy under the Dunes and Cireco Agreements. Fogerty's Response to Statement of Facts that Appear to be Without Substantial Conflict ("Fogerty Facts"), No. 4; Burnstein Declaration, Exs. 64A & 65. Shortly thereafter, Galaxy, under its tradename Jondora Music ("Jondora"), registered its copyright claim to Jungle as an unpublished work. Burnstein Declaration, Exs. 67 & 106; Declaration of Norman G. Rudman in Support of Plaintiff's Motions for Summary Judgment ("Rudman Declaration"), ¶ 3; Second Supplemental Declaration of Albert M. Bendich in Support of Plaintiff's Motions for Summary Judgment ("Second Supplemental Bendich Declaration"), ¶ 3; Supplemental Zaentz Declaration, ¶¶ 9, 11–13, Exs. SZ7–SZ9. In June 1970, Argosy Venture ("Argosy"), as Galaxy's sole shareholder, acquired all assets of Galaxy including the Jondora tradename and the Jungle copyright upon Galaxy's liquidation. Second Supplemental Bendich Declaration, ¶ 4; Second Supplemental Declaration of Malcolm Burnstein in Support of Plaintiff's Motions for Summary Judgment ("Second Supplemental Burnstein Declaration"), Ex. 108; Burnstein Declaration, Exs. 107 & 109. In 1981, plaintiff became the owner of the Jondora tradename and the Jungle copyright when Argosy assigned all its assets to plaintiff. Burnstein Declaration, Ex. 105. The court notes that Fogerty has presented no evidence, beyond mere assertions, disputing plaintiff's chain of title to Jungle. Therefore, the court finds that plaintiff owns the Jungle copyright.[1]

---

1. The court suspects that Fogerty is estopped from disputing plaintiff's ownership of the Jungle copyright. Fogerty has accepted from plaintiff and its predecessors royalties derived from the exploitation of Jungle. Second Supplemental Declaration of Frank Noonan in Support of Plaintiff's Motions for Summary Judgment, Ex. FNI. Under both the Cireco and Dunes Agreements, the obligation to pay Fogerty Jungle royalties falls only upon the owner of the Jungle copyright. *See,* Burnstein Declaration, Exs. 64A at ¶¶ 1 & 4, 65 at ¶¶ 1 & 6. However, since plaintiff has produced overwhelming evidence establishing its chain of title to the Jungle copy-

right, the court need not decide whether Fogerty's actions estop him from disputing plaintiff's ownership of the Jungle copyright.

As part of the court requested briefing regarding estoppel, Warner submitted briefing disputing plaintiff's ownership of the Jungle copyright. Because the court did not request further briefing on plaintiff's ownership of the Jungle copyright, the court does not consider Warner's arguments which do not concern estoppel. On the ownership issue, Warner previously joined Fogerty's opposition. The court holds Warner to its original joinder to Fogerty's opposition.

The court also finds that plaintiff has satisfied the registration and recordation requirements of the Copyright Act. As to registration, 17 U.S.C. § 412 requires copyright registration as a prerequisite to an award of statutory damages or attorney's fees. In 1970, Galaxy registered its copyright claim to Jungle as an unpublished work under its tradename Jondora. Burnstein Declaration, Exs. 67 and 106; Rudman Declaration, ¶ 3; Second Supplemental Bendich Declaration, ¶ 3; Supplemental Zaentz Declaration, ¶¶ 9, 1–13, Exs. SZ7–SZ9. Fogerty admits that Jondora properly registered Jungle and complied with all formalities required by the Copyright Office. Responses of defendant Fogerty to plaintiff's Requests for Admission ("Fogarty's Admissions"), B6 and B7. As previously set forth, plaintiff has shown that it succeeded to Galaxy's interest in both the Jondora tradename and the Jungle copyright. Although Jungle was subsequently published, the Copyright Act does not require plaintiff to re-register Jungle as a published work. See, 17 U.S.C. § 408(e) (registration for published work previously registered in unpublished form *"may* be màde") (emphasis added); *see also,* H.Rep. No. 1476, 94th Cong., 2d Sess. 181–182, *reprinted in* 1976 U.S. Code Cong. and Ad. News 5659, 5797–98 ("any registration made under the present law would satisfy these provisions [i.e. § 412]"). Thus, plaintiff has satisfied the registration requirements under § 412. As to recordation, 17 U.S.C. § 205(d) requires a party prior to instituting an infringement action to record the instrument of transfer by which it acquired the copyright. 17 U.S.C. § 205(d); *Swarovski America Ltd. v. Silver Deer Ltd.,* 537 F.Supp. 1201, 1203 (D.Colo.1982) (recordation of last link in chain of title sufficient). 17 U.S.C. § 204(a) states that a memorandum of the copyright transfer provides adequate documentation of a past copyright transfer. Here, plaintiff has recorded with the Copyright Office a memorandum of transfer evidencing its acquisition of the Jungle copyright from plaintiff's immediate predecessor, Argosy. Burnstein Declaration, Ex. 110. Plaintiff recorded this memorandum prior to insti-

tuting the present action. Thus, plaintiff has satisfied the recordation requirements of §§ 204 and 205.

Accordingly, plaintiff has proved the first element establishing copyright infringement. The court finds plaintiff the legal owner of the Jungle copyright.

Turning to the second element, plaintiff must prove that defendants copied a protectible expression. As previously explained, plaintiff may show this circumstantially (1) by demonstrating that Fogerty had access to Jungle prior to the creation of Old Man and (2) by providing evidence that establishes a substantial similarity of both general idea and expression between Jungle and Old Man. *See, Baxter,* 812 F.2d at 423.

The court finds that Fogerty had access to Jungle prior to the creation of Old Man. Fogerty admits that at the time he wrote Old Man, he had knowledge of Jungle. Fogerty's Admissions, B32. In any event, the court finds it self-evident that Fogerty had access to Jungle prior to the creation of Old Man. Fogerty composed Jungle prior to his composing Old Man.

As to substantial similarity, plaintiff maintains that substantial similarity exists between Jungle and Old Man as a matter of law. After reviewing the papers and exhibits submitted by the parties, the court finds that reasonable minds could differ as to the absence or existence of substantial similarity between Jungle and Old Man. *See e.g., Baxter,* 812 F.2d at 424–25.

Accordingly, the court denies plaintiff's motion for summary judgment concerning copyright infringement. The court however does find that plaintiff's ownership of the Jungle copyright and Fogerty's access to Jungle prior to the creation of Old Man are without substantial controversy. Fed. R.Civ.P. 56(d).

2. *Summary Judgment Re Defendants' Fair Use and 1st Amendment Defenses.*

(a) *Fair Use Defense:*

After reviewing the parties' papers, the court finds that disputed issues of material fact exist concerning defendants' fair use

defense. The court therefore denies plaintiff's motion for summary judgment concerning defendants' fair use defense.

### (b) *1st Amendment Defense:*

■ Defendants claim that the 1st Amendment protects them from plaintiff's infringement claim. Answer of John Fogerty to Complaint for Copyright Infringement, Etc., and Counterclaims for Copyright Infringement, Restitution of Songs, or, in the Alternative, for Damages and an Accounting ("Fogerty's Amended Answer"), ¶¶ 61 & 71; Answer of Defendants Warner Bros. Records, Inc. and WEA International Inc., to the First Amended Complaint ("Warner's Answer to Amended Complaint"), ¶ 26. More specifically, defendants argue that the 1st Amendment protects Fogerty's songwriting style; consequently, a finding of infringement would impair Fogerty's right to earn a livelihood. *Id.*

In *Sid & Marty Krofft Television v. McDonald's Corp.,* 562 F.2d 1157 (9th Cir. 1977), the Ninth Circuit found that the "idea/expression" dichotomy of the substantial similarity test serves to accommodate the competing interests of copyright and the 1st Amendment. *Id.,* at 1170. As the Ninth Circuit noted, a party cannot copyright ideas which may be of public interest; but, a party can copyright an idea's specific form of expression. *Id.* Accordingly, the Ninth Circuit observed that:

> [w]ith the law of copyright permitting the free use of ideas, it is not surprising that the few courts addressing the issue have not permitted defendants who copy a work's expression to hide behind the first amendment.

*Id.*

Therefore, the court grants plaintiff's motion for summary judgment as to defendants' 1st Amendment defense. The "idea/expression" dichotomy serves to accommodate any 1st Amendment concerns expressed by defendants. *See e.g., Fisher v. Dees,* 794 F.2d 432, 434 n. 2 (9th Cir. 1986).

3. *Summary Judgment Re Defendants' Liability for Extraterritorial Exploitation of Old Man.*

Assuming infringement, defendants appear to contend that plaintiff cannot recover profits derived from the extraterritorial exploitation of Old Man. *See,* Statement of Position of Warner Bros. Records Inc. Regarding Motion of Fantasy, Inc. to Add WEA International Inc. as a Defendant, p. 2. Plaintiff maintains that defendants' infringement activities conducted in the United States allow it to recover profits derived from the extraterritorial exploitation of Old Man.

■ U.S. copyright laws generally do not have extraterritorial effect. *Peter Starr Prod. Co. v. Twin Continental Films,* 783 F.2d 1440, 1442 (9th Cir.1986). As a result, no cause of action exists for "infringing actions which take place entirely outside the United States." *Id.* However, where some infringing acts do take place in the United States, a plaintiff may recover through a constructive trust the extraterritorial profits derived from those infringing acts. *See,* 3 M.B. Nimmer, *Nimmer on Copyright ("Nimmer")* §§ 14.05 & 17.03 (1986); *see also, Robert Stigwood Group Ltd. v. O'Reilly,* 530 F.2d 1096, 1101 (2nd Cir.1976). In *Peter Starr,* the Ninth Circuit concluded that where a party illegally authorizes within the United States the use of a copyrighted work abroad, this illegal authorization constitutes an infringing activity which alone confers federal jurisdiction. *Id.,* at 1442–43.

■ In the present case, Fogerty, and subsequently WBR, authorized within the United States the reproduction and sale of Fogerty performances abroad. Fogerty entered into an agreement with WBR authorizing it to manufacture, sell and distribute records embodying John Fogerty performances (including Fogerty's performance of Old Man) "world wide" ("WBR Agreement"). Burnstein Declaration, Ex. 15; Fogerty Facts, No. 7 (Fogerty concedes authorizing WBR to distribute records embodying John Fogerty performance of Old Man). WBR licensed its foreign rights in the WBR Agreement to WEA ("WEA Agreement"). Burnstein Declaration, Ex. Q. Fogerty concedes that both these

agreements were executed in the United States. Fogerty Facts, No. 12.

Plaintiff argues that the WBR and WEA Agreements constitute an authorization to conduct infringing activities abroad. Plaintiff therefore contends it should recover any extraterritorial profits derived from this illegal authorization which occurred in the United States.

Fogerty argues that the WBR and WEA Agreements do not constitute acts of infringement. Fogerty states that the WBR and WEA Agreements merely grant the right to reproduce and sell records embodying John Fogerty musical performances. Fogerty Facts, No. 12. Other than that right, these agreements, Fogerty contends, do not grant any right to record and reproduce the actual copyrighted work Old Man. *Id.* Fogerty maintains that mechanical use licenses confer such rights concerning the specific copyrighted work. *Id.; see e.g.,* Burnstein Declaration, Ex. H. Fogerty contends that the WEA Agreement contemplates that WEA's sublicensees shall obtain mechanical use licenses in their respective territories (i.e. outside the United States). *See e.g.,* Burnstein Declaration, Ex. Q at ¶ 12. Apparently then, Fogerty argues that any alleged illegal authorization will occur during the granting of these mechanical use licenses and thus did not occur during the execution of the WBR and WEA Agreements.

The court denies plaintiff's motion for summary judgment regarding defendents' liability for extraterritorial exploitation of Old Man. If any infringing act (i.e. an illegal authorization) occurs in the United States, then the court may impose a constructive trust upon the extraterritorial profits derived from that infringing act. *See, Peter Starr,* 783 F.2d at 1442–43; *see also, Robert Stigwood Group,* 530 F.2d at 1101. The court finds the evidence unclear as to whether the extraterritorial profits of Old Man derived from an act of infringement occurring within the United States. Furthermore, the court notes that no party has produced mechanical use licenses concerning the foreign exploitation of Old Man. Therefore, since material facts continue in dispute, the court denies plaintiff's motion for summary judgment on this issue.

B. *Defendant Fogerty's Motion for Summary Judgment on Plaintiff's Second Claim for Declaratory Relief.*

■ Fogerty moves for summary judgment on plaintiff's second claim for declaratory relief. Plaintiff's second claim requests the court to declare that plaintiff has no contractual obligation to pay Fogerty any portion of the recovery obtained by plaintiff for infringements committed by Fogerty. Fogerty argues that plaintiff has a contractual obligation to pay Fogerty fifty percent of any recovery from this action.

The contractual provision at issue ("paragraph 13") provides that:

... [a]ny legal action brought by Publisher [Fantasy, Inc.] against any alleged infringer of any musical composition hereunder shall be initiated and prosecuted by the Publisher and if there is any recovery made by the Publisher as a result thereof, after deduction of the expenses of litigation, including but not limited to attorneys fees and court costs, a sum equal to fifty percent (50%) of such net proceeds shall be paid to Dunes [Fogerty]....

Burnstein Declaration, Ex. 65 at ¶ 13; *see also, Id.,* Ex. 64A at ¶ 13 (Cireco Agreement contains similar clause as ¶ 13 of Dunes Agreement). In addition, the contract provides that California law shall govern its construction. *Id.,* Exs. 65 at ¶ 17 & 64A at ¶ 16.

Plaintiff and Fogerty attach different interpretations to paragraph 13. Fogerty maintains that paragraph 13 "sets forth in clear and unambiguous language" that Fogerty shall receive fifty percent of plaintiff's recovery from an infringement action regardless of Fogerty's own acts of infringement. Plaintiff argues that the parties intended that Fogerty would share in infringement recoveries only where Fogerty did not infringe himself and has no connection to a third-party infringer.

California law provides that "the language of a contract is to govern its inter-

pretation, if the language is clear and explicit, and does not involve an absurdity." Cal.Civ.Code § 1638. In addition, a court should interpret a contract as a whole, "so as to give effect to every part." Cal.Civ. Code § 1641. When two interpretations are available, a court should choose "the fair and reasonable interpretation rather than one leading to harsh and unreasonable results." *Bergin v. Van Der Steen*, 107 Cal.App.2d 8, 14, 236 P.2d 613 (1951).

The overall scheme of the Cireco and Dunes Agreements contemplates paragraph 13 as a form of "substitute compensation." In the Dunes and Cireco Agreements, Fogerty granted plaintiff's predecessors exclusive rights in the Jungle copyright. *See*, Burnstein Declaration, Exs. 64A at ¶ 1 & 65 at ¶ 1. In return, Fogerty was to receive a sales percentage and other royalties derived from Jungle's exploitation by its copyright owner. *Id.*, Exs. 64A at ¶ 4 & 65 at ¶ 6. The contracts however do not directly provide Fogerty with royalties or a sales percentage from an infringer's exploitation of Jungle. In such an event, paragraph 13 provides Fogerty with "substitute compensation" by granting him a percentage of plaintiff's infringement recovery.

The court finds that Fogerty's interpretation of paragraph 13 would lead to an absurd result and conflict with the overall intent of the Dunes and Cireco Agreements. Plaintiff's obligation to pay Fogerty a sales percentage and other royalties depends upon plaintiff receiving from Fogerty the exclusive rights to Fogerty's compositions. *See*, Burnstein Declaration, Exs. 64A at ¶ 4 & 65 at ¶ 6 ("Publisher hereby agrees to pay Dunes for the rights acquired and to be acquired hereunder, the following compensation ...."). Accordingly, if Fogerty breaches his promise to grant plaintiff exclusive rights by infringing upon those rights, plaintiff has no obli-

gation to pay Fogerty compensation.[2] Likewise, since paragraph 13 acts as substitute compensation, Fogerty should not share in any recovery based on his own or his agents' acts of infringement. Fogerty's interpretation of paragraph 13 would grant him compensation for breaching the agreements. Thus, Fogerty's interpretation also conflicts with the maxim that one cannot "take advantage of his own wrong." Cal.Civ.Code § 3517.

Therefore, the court denies Fogerty's motion for summary judgment regarding plaintiff's second claim for relief. The court finds that the provision of paragraph 13 allowing Fogerty to receive a percentage of plaintiff's recovery in an infringement action only applies to those recoveries not based on Fogerty's or his agents' acts of infringement. This interpretation of paragraph 13 conforms to the parties' basic intent that Fogerty's right to compensation depends on his grant to plaintiff of exclusive rights in his compositions.

C. *Plaintiff's Motion for Summary Judgment Re Fogerty's First and Second Counterclaims.*

Plaintiff moves for summary judgment on Fogerty's first and second counterclaims. Fogerty's first counterclaim seeks to rescind the Cireco and Dunes Agreements for non-payment of royalties and demands restitution of songs including the Jungle copyright. Fogerty's second counterclaim alleges against plaintiff copyright infringement of Jungle. Plaintiff maintains that its suspension of royalty payments to Fogerty pending the outcome of this action is not a material breach of the Cireco and Dunes Agreements.

1. *Summary Judgment as to Fogerty's First Counterclaim.*

On March 5, 1985, plaintiff began to deposit all royalties due Fogerty from the Dunes and Cireco Agreements into an ir-

---

**2.** Other provisions contained in ¶ 13 exemplify this *quid pro quo* connection between Fogerty's right to receive compensation and the plaintiff's receipt of exclusive rights. For example, ¶ 13 allows plaintiff to withhold Fogerty's royalty payments pending the outcome of a third-party challenge to the exclusive rights Fogerty granted to plaintiff. Burnstein Declaration Exs. 64A at ¶ 13 & 65 at ¶ 13. In other words, if Fogerty's grant of exclusive rights is questioned, plaintiff may suspend Fogerty's royalty payments. Thus, Fogerty's right to contractual compensation depends upon his guarantee that the rights he delivers to plaintiff are exclusive.

revocable escrow account. Declaration of Frank Noonan in Support of Plaintiff's Motions for Summary Judgment ("Noonan Declaration"), ¶ 2. Plaintiff instructed the escrow agent to hold the funds until either a court order or a joint instruction from plaintiff and Fogerty releases them to a specified party or parties. Declaration of Paul Halvonik in Support of Plaintiff's Motions for Summary Judgment ("Halvonik Declaration"), ¶¶ 3-4, Ex. T. On March 8, 1985, plaintiff notified Fogerty that all subsequent royalties would be placed in the above described escrow account as security for any judgment plaintiff may receive concerning Fogerty's alleged infringement. Burnstein Declaration, ¶ 10, Ex. P. Plaintiff also informed Fogerty that they would resume payment of royalties if he provided an alternative source of security. *Id.* Fogerty did not discuss with plaintiff any alternate forms of security. On July 26, 1985, plaintiff filed this action. To date, the escrow account contains approximately $630,000.00. Halvonik Declaration, ¶ 3. Prior to March 5, 1985, plaintiff or its predecessors had paid Fogerty over $2.25 million in songwriter royalties. Burnstein Declaration, ¶ 36.

California law provides that a party may unilaterally rescind a contract only if there is a material breach by the other party. Cal.Civ.Code § 1689(b)(2). A material breach is one that "is so dominant and pervasive as in any real or substantial measure to frustrate the purpose of the undertaking." *Medico-Dental Building, Co. v. Horton & Converse,* 21 Cal.2d 411, 433-34, 132 P.2d 457 (1942). If, however, a breach does not go "to the root of the matter" and "can be readily compensated in damages," a party may not rescind. *Integrated, Inc. v. Alec Fergusson Electrical Contractors,* 250 Cal.App.2d 287, 296, 58 Cal.Rptr. 503 (1967).

The court finds that plaintiff's deposit of Fogerty's royalties into an irrevocable escrow account does not amount to a material breach of the Cireco and Dunes Agreements. As a matter of law, a "bona fide dispute" regarding royalty payments does not amount to a material breach unless the contract expressly provides so. *Guinness*

*& Sons v. Sterling Pub. Co.,* 732 F.2d 1095, 1101 (2nd Cir.1984). In the present case, neither the Dunes Agreement nor the Cireco Agreement expressly state that deposit of royalties in an irrevocable escrow account shall be considered a material breach. In addition, the court finds that plaintiff has a bona fide dispute with Fogerty regarding Fogerty's alleged infringement of Jungle. Lastly, Fogerty has failed to show that damages cannot readily compensate him for any delay concerning his receipt of royalty payments.

Fogerty supplies legal authority that fraud, inability to exploit the copyright or inability to pay royalties in the future may support a claim for rescission. However, Fogerty supplies no factual basis beyond mere assertions that plaintiff has acted fraudulently or delinquently. In fact, the facts show quite the opposite. Prior to March 5, 1985, plaintiff or its predecessors paid Fogerty over $2.25 million in songwriter royalties. These past royalty payments demonstrate plaintiff's and its predecessors' ability to exploit Fogerty's material. *See,* Burnstein Declaration, ¶ 36. In addition, plaintiff has affirmed its obligation to pay royalties under the Cireco and Dunes Agreements by depositing Fogerty's royalties in an interest bearing irrevocable escrow account. Also, plaintiff has shown its good faith by notifying Fogerty concerning the terms of the escrow account, allowing Fogerty the option of providing other security and furnishing Fogerty with royalty statements for each six month period. Burnstein Declaration, Ex. Q; Supplemental Declaration of Malcolm Burnstein ("Supplemental Burnstein Declaration"), ¶ 4. Finally, plaintiff has offered to cooperate with Fogerty concerning the selection of a new escrow holder if Fogerty has concerns regarding the present escrow agent. *Id.,* at ¶ 2.

Therefore, the court grants plaintiff's motion for summary judgment on Fogerty's first counterclaim. Plaintiff's deposit of Fogerty's royalties in an irrevocable escrow account does not amount to a material breach of the Cireco and Dunes Agreements. Fogerty has failed to supply the

court with any facts which would justify his rescission of the Cireco and Dunes Agreements.

### 2. *Summary Judgment Re Fogerty's Second Counterclaim.*

Since this court has granted plaintiff's motion for summary judgment on Fogerty's first counterclaim for rescission, this court must grant plaintiff's motion for summary judgment on Fogerty's second counterclaim for infringement. Fogerty can only succeed on his second counterclaim if he obtains rescission of the Cireco and Dunes Agreements thus regaining ownership of Jungle. The court has found that Fogerty has no right to rescind the Cireco and Dunes Agreements. The court has also found that plaintiff is the owner of the Jungle copyright. Since Fogerty can not prove ownership of Jungle, Fogerty cannot maintain an action for Jungle's infringement. *See, Baxter,* 812 F.2d at 423 (to succeed in an infringement action, a party must prove ownership of the exclusive rights infringed). Therefore, the court grants plaintiff's motion for summary judgment on Fogerty's second counterclaim.

In accordance with the foregoing, it is hereby ordered that:

(1) plaintiff's motion to strike Fogerty's Answer to First Amended Complaint is granted;

(2) plaintiff's motion for summary judgment concerning copyright infringement is denied;

(3) plaintiff's motion for summary judgment concerning defendants' fair use defense is denied;

(4) plaintiff's motion for summary judgment concerning defendants' 1st Amendment defense is granted;

(5) plaintiff's motion for summary judgment concerning defendants' liability for extraterritorial exploitation of Old Man is denied;

(6) plaintiff's motion for an order under Rule 56(d) is granted as to the facts establishing plaintiff the legal owner of the Jungle copyright and Fogerty's access to Jungle prior to the creation of Old Man;

(7) Fogerty's motion for summary judgment on plaintiff's second claim for declaratory relief is denied; and,

(8) plaintiff's motion for summary judgment on Fogerty's first and second counterclaims is granted.

## ORDER DENYING WARNER'S MOTION FOR RECONSIDERATION

Plaintiff brings this action against defendants John C. Fogerty and Wenaha Music Co., (collectively "Fogerty") and Fogerty's licensees, defendants WEA International, Inc. and Warner Bros. Records, Inc. (collectively "Warner") for copyright infringement.

In 1970, Fogerty wrote the song "Run Through the Jungle" ("Jungle"). Fogerty subsequently granted the exclusive rights in the Jungle copyright to plaintiff's predecessors, Cireco Music and Galaxy Records. In return, Fogerty received a sales percentage and other royalties derived from the exploitation of Jungle. In 1984, Fogerty wrote the song "The Old Man Down the Road" ("Old Man"). Fogerty registered a copyright to Old Man and then authorized Warner to distribute copies of Fogerty's performance of Old Man. Plaintiff claims Old Man is Jungle with new words and has sued for infringement.

This matter is presently before the court on Warner's motion for reconsideration. Warner asks the court to reconsider its June 5, 1987 decision finding plaintiff the legal owner of the Jungle copyright. *See,* Order Re Plaintiff's Motion to Strike and Motions for Summary Judgment and Fogerty's Motion for Summary Judgment ("June 5, 1987 order"), p. 6 1.27—p. 10 1.24. Warner argues that as a matter of law, a broken link exists in plaintiff's chain of title. Specifically, Warner maintains that Fantasy/Galaxy Inc. ("Galaxy") prior to its 1970 liquidation failed to transfer the Jungle copyright to its sole shareholder Argosy Venture ("Argosy") by a contemporaneously-executed written instrument. Warner contends that a contemporaneous written assignment was the *sine qua non* of a valid transfer of copyright ownership un-

der the 1909 Copyright Act. Warner therefore asserts that since Galaxy's transfer to Argosy was invalid, Argosy had no interest in the Jungle copyright to subsequently assign to plaintiff.

Pre-1978 copyright law provided that: [c]opyright secured under this title ... may be assigned, granted, or mortgaged by an instrument in writing signed by the proprietor of the copyright, or may be bequeathed by will.

17 U.S.C. § 28 (superseded 1978). Pursuant to § 28, courts have invalidated voluntary oral transfers finding a written instrument a prerequisite to a valid copyright assignment. *See e.g., Gardner v. Nizer,* 391 F.Supp. 940, 942 (S.D.N.Y.1975).

The present case however does not deal with a voluntary copyright assignment. Argosy succeeded to the ownership of the Jungle copyright by operation of law. The transfer of assets from a dissolving corporation to its shareholders is a transfer by operation of law. Cal. Corp.Code § 2004; *Trubowitch v. Riverbank Canning Co.,* 30 Cal.2d 335, 344–45, 182 P.2d 182 (1947); *Brodie v. Barnes,* 56 Cal.App.2d 315, 320–21, 132 P.2d 595 (1942). Argosy, as Galaxy's sole shareholder, acquired all assets of Galaxy including the Jungle copyright upon Galaxy's 1970 dissolution. *See,* June 5, 1987 order, p. 8 1s.10–18; *see also,* Declaration of Joseph L. Golden, Ex. JLG 1. Thus, the issue becomes whether the requirements of § 28 applied to copyright transfers by operation of law.

█ The court concludes that the requirements of § 28 did not apply to copyright transfers by operation of law. The court has found no case authority or legislative history indicating that the requirements of § 28 applied to transfers by operation of law. In fact, case and treatise authority point to the opposite conclusion, that copyright transfers by operation of law were valid under the 1909 Copyright Act. *See, Brecht v. Bentley,* 185 F.Supp. 890 (S.D.N.Y.1960) (intestate succession);

18 C.J.S. *Copyright and Literary Property* §§ 82–83 (1939) ("the transfer of copyright may be effected either by operation of law or by voluntary assignment"). Also, section 28's enumerated types of transfer, "assigned, granted, or mortgaged," denote voluntary action taken by the copyright proprietor, thus § 28 appears unconcerned with involuntary transfers imposed by law.[1] In addition, "[w]here principles compelled under the Copyright Act of 1976 are not precluded by decisions under the 1909 Act, those principles should be implemented to the extent possible." *Jerry Vogel Music Co. v. Warner Bros. Inc.,* 535 F.Supp. 172, 175 (S.D.N.Y.1982). The 1976 Copyright Act explicitly states that copyright transfers by operation of law do not have to satisfy the writing requirements concerning transfer. *See,* 17 U.S.C. § 204(a). Lastly, the court notes that its conclusion is not without analogous precedent. Federal courts have exempted transfers by operation of law from the writing requirements imposed on assignment of claims against the United States. *See, Novo Trading Corp. v. Commissioner of Internal Revenue,* 113 F.2d 320, 322 (2nd Cir.1940); *New York Guardian Mortgagee Corp. v. Cleland,* 473 F.Supp. 422, 434 (S.D.N.Y.1979).

Accordingly, the court denies Warner's motion for reconsideration. Argosy succeeded to the ownership of the Jungle copyright by operation of law. The requirements of § 28 did not apply to transfers by operation of law. Therefore, the court finds the transfer from Galaxy to Argosy valid.

In accordance with the foregoing, it is hereby ordered that:

(1) Warner's motion for reconsideration is denied.

---

1. Section 28's sparse legislative history supports this observation. The history reveals a concern only as to clarifying the proprietor's conveyance rights. The history makes no mention of transfers by operation of law. *See,* 4 M.B. Nimmer, *Nimmer on Copyright* App. 13 (The House Report on the Copyright Act of 1909), p. 25 (1983).